J. A. BOGGS, APPELLEE, v. WILLIAM I. YOUNG ET AL., APPELLANTS.

FILED MAY 7, 1908.  No. 15,191.

Sales: RESCISSION: ACTION FOR PRICE. Where, in a sale of personal property on time, the vendor within a few days after the sale, fearing that the contract of sale may be impeached for alleged mental incompetency of the vendee, retakes possession of the property sold and converts it to his own use, the vendee may waive his right to sue for conversion, and, by acquiescing therein, may treat the unauthorized act of the vendor as a rescission of the sale, and successfully urge such rescission as a defense in an action by the vendor to recover the purchase price.

APPEAL from the district court for Johnson county: JOHN B. RAPER, JUDGE. *Reversed with directions.*

*Hugh La Master,* for appellants.

*L. C. Chapman,* contra.

Good, C.

On the 28th day of June, 1902, William I. Young purchased a threshing machine from J. A. Boggs for the agreed price of $650, and on the same day executed and delivered to Boggs a real estate mortgage for $855. Soon afterwards Young was placed under guardianship as a spendthrift. This action was brought by Boggs against Young and his guardian and others to foreclose the mortgage. Young and his guardian answered, averring that the mortgage had been given to secure payment for the threshing machine; that Young was mentally incompetent to contract at the time it was given; and alleged a rescission of the contract of sale and a failure of consideration. No appearance was made by the other defendants. The trial court found that Young was competent, but that there was a partial want of consideration, and allowed certain items of credit, and entered a decree of foreclosure in favor of the plaintiff for $557.56. Defendants Young and his guardian have appealed.

The evidence discloses that on the 28th of June, 1902, Young was indebted to Boggs in the sum of $116.84; that on that day he purchased a threshing machine from Boggs for the sum of $650, and that it was reasonably worth that amount. He executed three promissory notes for $285 each, and a real estate mortgage to secure them. The consideration for these notes and mortgage was the threshing machine and the $116.84. The difference between these two items and the amount of the mortgage Boggs agreed to advance to Young, but, in fact, he never did so. Four days after the purchase of the threshing machine proceedings were begun to place Young under guardianship. It was alleged that he was mentally incompetent and a spendthrift. After a contest the county court found that Young was a spendthrift and a fit subject for guardianship. An appeal was taken to the district court, with a like result. The decision was rendered in the county court on the 21st or 22d of July, 1902, but, owing to the delay

on account of the appeal, the guardian was not actually appointed and qualified until January, 1903. After the purchase of the threshing machine by Young he made two or three attempts to operate it, and then left it on the roadside and abandoned it. Shortly after the decision was rendered by the county court in July finding Young a fit subject for guardianship, Boggs took possession of the threshing machine, and caused it to be operated during the remainder of the threshing season of 1902, and also during the threshing season of 1903. Early in 1904 he sold the machine to a third party for $265. It appears that he received as a net income from the machine for the seasons of 1902 and 1903 the sum of $153. These several sums, together with the difference between the face of the mortgage and the amount that was due to Boggs on June 28, including the price of the threshing machine, were deducted by the trial court from the face of the notes and interest at the time of the trial, and a decree of foreclosure was rendered for the remainder.

Appellants contend that the trial court erred in finding Young competent at the time of the giving of the mortgage, and in its failure to find that the contract of sale had been rescinded, and in its failure to find that there was a total failure of consideration. On the question of Young's competency, the evidence is in conflict, but it clearly appears that Young possessed a very immature intellect. Young was a witness in behalf of the defendants, and if he had not been exami..ed we would have been inclined to the view that the evidence would warrant a finding that he was incompetent; but his examination, together with all the other evidence, justifies the finding that he possessed sufficient mentality to enter into the contract, and the finding of the trial court in that respect is sustained by the record.

We are then confronted with this situation: Boggs sold and delivered a threshing machine to Young, who abandoned it, and within less than 30 days from the time of the sale Boggs retook possession of the machine and con-

verted it to his own use. Young and his guardian never objected or protested against the act of Boggs, but acquiesced therein. There is no pretense that Boggs had any legal right to take possession of the machine, and no denial that his act constituted a conversion. However, we think it is fairly inferable from the record that when Boggs found that Young was likely to be placed under guardianship, as incompetent, and that the sale of the threshing machine made to him a few days previously might be held invalid, he deemed it prudent and wise on his part to repossess himself of the machine, and that he did this for the purpose of protecting himself in the event that the sale and the mortgage should be questioned. Neither Young nor his guardian ever questioned Boggs' right to take possession of the machine or his title to the machine after he possessed himself of it. It is clear that the taking of the machine was a wrongful act, and that Boggs might have been sued by Young or his guardian for conversion. But, instead of doing that, Young's guardian acquiesced in Boggs' taking and exercising ownership over the machine, and now claims the right to treat Boggs' act as a rescission of the contract of sale. On the other hand, Boggs contends that he did not intend to rescind, that his act and conduct did not constitute a rescission of the sale, and that he is entitled to a foreclosure of his mortgage for the full amount. It is a familiar rule that, where one party to an executory contract renounces the contract and refuses to be bound thereby, the other party may accept his renunciation as a rescission of the contract, and the second party is not required to take any affirmative action to constitute an acquiescence in the rescission. A vendor who has a right to rescind the contract has a right of election between that remedy and an action for the contract price, but these remedies are not concurrent; and, by electing to pursue one with a knowledge of the facts, he waives the other. *First Nat. Bank v. McKinney*, 47 Neb. 149; *First Nat. Bank v. Tootle*, 59 Neb. 44; 24 Am. & Eng. Ency. Law (2d ed.), 1140. In

Story, Sales, sec. 419, it is said in substance that, if the vendor receives back the goods under protest, he does not thereby disclaim his right to insist upon performance by the vendee, but, if he undertakes to exercise acts of ownership over them, as by using or offering them for sale, the contract will be considered as rescinded. In 2 Parsons, Contracts (9th ed.), p. *678, it is said: "If either party, without right, claims to rescind the contract, the other party need not object, and, if he permits it to be rescinded, it will be done by mutual consent. Nor need this purpose of rescinding be expressly declared by the one party, in order to give to the other the right of consenting, and so rescinding. There may be many acts from which the opposite party has a right to infer that the party doing them would rescind." In *Redmond v. Smock,* 28 Ind. 365, it is held: "When, on a refusal by the buyer to complete a contract of sale and an abandonment by him of the property, the seller retakes possession of the property, treating it as his own, and sells the same, without notice to the buyer of an intention to sell for his account, it is a rescission of the contract." In *Grouse v. Wolfe,* 24 N. Y. Supp. 703, it is held: "After sale, delivery, and acceptance of an article, the purchaser offered to return it, and did take it to a place where the seller assumed possession, and thereafter sold it to another. *Held,* That there was a rescission of the first sale, and therefore an action would not lie against the purchaser at such sale for the purchase money." While none of these authorities go to the precise point, and the first authorities relate to executory contracts, we can see no reason why the principle laid down therein should not be applied to an executed contract such as the one at bar. Boggs, although without any right to rescind, did in fact undertake to rescind the contract of sale by retaking the subject of the sale and converting it to his own use. We think the proper rule to apply is that, under such circumstances, the vendee has the right either to sue for conversion or to accept and

43

treat the conduct of the vendor as a rescission of the contract. Certainly the vendor ought not to be permitted to complain that he did not have authority to rescind, when he had attempted the rescission. He ought not to be permitted to take advantage of his own wrong. He has taken it upon himself to say that he would repossess himself of the property sold, and, under such circumstances, he will not be permitted in a court of equity to exact a recovery of the purchase price. We therefore deduce the following rule as applicable to the case: Where, in a sale of personal property on time, the vendor within a few days after the sale, fearing that the contract of sale may be impeached for alleged mental incompetency of the vendee, retakes possession of the property sold and converts it to his own use, the vendee may waive his right to sue for conversion, and, by acquiescing therein, may treat the unauthorized act of the vendor as a rescission of the sale, and successfully urge such rescission as a defense in an equitable suit by the vendor to recover the purchase price.

There was but one item, therefore, included in the notes and mortgage in controversy upon which the appellee was entitled to a foreclosure, and that was for the debt of $116.84, due him at the time of the making of the mortgage. The judgment of the district court should be reversed, with directions to enter a decree of foreclosure for the sum of $116.84, with interest thereon at the stipulated rate.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with directions to enter a decree of foreclosure for the sum of $116.84, with interest thereon from the date of the mortgage to the entry of the decree.

REVERSED.